## No. 7533.

### THE STATE VS. JOHN FOSTER AND CHARLES SPEED.

When it appears that there were the names of not less than 1000 qualified persons in the wheel from which the jury commissioners drew a panel of petit jurors, the fact that there were at the same time the names of a large number of persons not qualified to act as jurors, will not vitiate the drawing.

The law does not direct from what sources the commissioners are to seek for the names of petit jurors, and in the absence of charges of fraud, or corruption, the commissioners will not be interfered with in that respect. Mere carelessness on their part, resulting in having the names of a large number of disqualified persons in the wheel, will not invalidate their drawing.

Questions of fact cannot be considered by this Court.

An *information* which charges the defendant with publishing as true a forged order "*with intent to defraud*," is sufficient under the statute which makes such an act a crime when done "*with intent to injure, or defraud.*"

APPEAL from the Superior Criminal Court, parish of Orleans. *Whitaker, J.*

*H. N. Ogden,* Attorney-General, for the State.

*Andrew H. Wilson* and *W. L. Evans* for defendants.

H. N. Ogden, Attorney-General, contended :

That this court is without power to restrict the commissioners to any special method of procuring names, as the law is silent upon that subject. The truth is, the whole subject matter of this bill is of fact, and not of law, and the decision of the judge below disposes of it. All of the other bills refer to matters of fact, not reviewable in this court. The motion in arrest of judgment upon the ground that " the information does not charge that it was published with intent to defraud, but charges that defendant intended to defraud by means of the check " surely cannot require any notice. See Act No. 94 of 1873, section 9.

Andrew H. Wilson and W. L. Evans, for defendant, contended:

First—That challenge to the array is made because the officer, clerk, or the persons whose duty it was to make the array of jurors, are in default in the performance of their duties; or on account of some original defect in making the return of the *venire;* "or when exception is taken to the principle on, or the means by, which the jury has been procured, as when the sheriff has not chosen the jurors impartially." Chitty's Criminal Law, vol. 1, m. p. 536-7 and notes; Co. Litt. 166, a; Bacon's Abr. Juries, E. 1. Tidd. 5th ed. 845; Black. Comm. 3d Book, m. p. 359; 1 Archbold's Crim. Pr. and Pl. 6th ed., page 163-1; Bouvier's Inst. ¶ 3041.

Second—That under the law the jury commissioners had no authority to draw a panel of jurors from names of persons taken from the *directories* of the city of New Orleans. See act 24, extra session of 1878, p. 280.

The opinion of the court was delivered by

Spencer, J. The defendants were convicted on an information for publishing as true a forged order for payment of money.

They have appealed, and have presented for our consideration three bills of exception.

The first bill relates to a challenge to the array of petit jurors on the grounds that at the time the names were drawn from the wheel it did not contain the names of not less than one thousand good and competent men, selected impartially from the citizens of the parish of Orleans having the qualifications to register as voters; but that said wheel did contain the names of a large number of persons who were not good and competent men, etc.; that of 400 names drawn, 352 were by order of the court stricken from the list for the following reasons, viz.: returned by sheriff as not found, 126; minors, 28; dead, 21; out of city, 24; not citizens, 14; sick, 17; exempt firemen, 13; over age, 17; served as jurors within two years, 23; residents of Sixth District, 1; exempt for militia services, having paid fifty dollars to the State, 2; United States officers, 2; member of General Assembly, 1; excused by the court for other legal cause, 59.

The agreed facts are that there were at the time of the drawing 1369 names in the wheel. That of the 400 drawn there were, as stated above, 352 not available. Of the 352 there were 160 disqualified or exempt, not including those reported, not found, sick, and dead. The names in the wheel were selected by the jury commissioners from the city directory, taking such names, without special investigation of their qualifications, as they supposed represented qualified persons. The law is as follows:

"The said commissioners shall select, impartially, from the citizens of the parish of Orleans having the qualifications requisite to register as voters the names of not less than one thousand good and competent men, a list of whose names shall be made out and returned, certified under their hands, to the clerk of the Superior Criminal Court, to be filed by him in his office; said list shall be kept complete, and supplemented from time to time, before each drawing, and no drawing shall be made from a list of less than one thousand names, and in order to the proper preparation of such lists and supplemental lists, and to the selection of such good and competent men; *provided*, no person shall be liable to serve as a juror oftener than once in two years. The said commissioners shall have at all times access to, and the right to copy from, the several books of registration of the voters of the parish of Orleans; shall be authorized to apply to the Superior Criminal Court for, and said court shall thereupon direct to be issued, subpenas to secure the attendance of witnesses and the production of papers; and persons failing to obey such subpenas may be punished for contempt."

The question is, was the jury, thus selected and drawn, a legal one? The commissioners were certainly careless in the discharge of their duties, but there is no pretense that they acted corruptly or from improper motives. The law does not direct from what source the commissioners are to seek for names. It manifestly did not intend to confine them to the registration rolls, for it does not require the person to be a registered voter, but simply to have the qualifications requisite to register as a voter. The purpose was to subject to jury duty that large class of citizens who do not register, and to this end it was their duty to go to other sources than the registration. In the nature of things the most careful investigation would fail to afford a thoroughly accurate return. Many would not be found, many would be sick, or would die, or be absent, and more or less prove to be exempt or disqualified. True, the result of the drawing in question disclosed an undue proportion of such persons, more of them than there should have been with ordinary care. But if we hold that the presence of such names in the wheel vitiates the whole selection and drawing in this case, the principle thus established would render it well-nigh impossible to get a panel at all. The law seems to trust the matter to the honesty and discretion of the commissioners, and, in the absence of charges of fraud or corruption, we think it would be unsafe to interfere. We do not think the present case presents *legal* objections to the panel. In the case of "The State vs. Newhouse," 29 An. 84, the commissioners delegated the preparation of their lists to a person not authorized or sworn for the purpose. In this case, the most that can be said is that the commissioners were not as careful as they should have been in the discharge of their duties.

The second bill is taken to the refusal of the judge to grant a new trial on the grounds:

First.   That the check offered in evidence as the instrument forged was not sufficiently identified as such.

Second.   That there was no evidence showing that Speed had guilty knowledge.

It is manifest that the questions here presented are of fact, and not of law, and therefore not reviewable by this court.

The third bill of exceptions is to the refusal of the judge to arrest judgment upon the grounds urged," to wit:

1st.   That the information charges the intent only " to defraud," whereas it should have charged the intent "to injure and defraud."

2d.   That the information does not charge that it was "published with intent to defraud," but charges that "the defendants intended to defraud by means of the check," which are not equivalent expressions.

3d.   "That the charges made in the information are not sufficient in law to constitute the crime of publishing," etc.

The second ground above stated the counsel abandon, but they insist on the first and third, contending that as the statute (R. S. 883) makes use of the words " with intent to injure or defraud," the charge should have been " with intent to injure and defraud." The charge is, " with intent thereby to defraud." The rule is that where the statute in stating the intent uses the disjunctive, the indictment should use the conjunctive, if it changes more than one of the intents. Thus it would be bad to charge in this case in the words of the statute, " with intent to injure or defraud," for that would leave the offense uncertain. If both intents are charged it must be done conjunctively. But it is sufficient to charge either intent, as " with intent to injure," or "with intent to defraud." It is a crime to do the act prohibited, with either or both intents, and they may be charged separately or conjunctively.   See State vs. Banton, 4 An. 32.

We therefore conclude that the judgment and sentence appealed from are correct, and the same are affirmed.

Rehearing refused.